**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

CHRISTOPHER JONES                                                                                    PLAINTIFF
ADC #611484

v.                                            3:21-cv-00172-BSM-JJV

KENDALL DRINKARD,
Sergeant, North Central Unit                                                                      DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this Recommendation. Objections should be specific and include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation. Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

**I.     INTRODUCTION**

Christopher Jones ("Plaintiff") is a prisoner in the Varner Super Max Unit of the Arkansas Division of Correction. (Doc. 45-18 at 16.) He has filed a *pro se* Complaint alleging: (1) Defendants Sergeant Kendall Drinkard, Corporal Andrew Teegarden, Corporal Scott Jenkins, and Sergeant Ian Ward violated the Eighth Amendment and committed the Arkansas tort of assault when they used excessive force against him on June 16, 2021; (2) Defendant Drinkard violated the First Amendment by using force to retaliate against Plaintiff for suing him in a different federal lawsuit; and (3) Defendant Captain Kaleena Watson violated the Eighth Amendment by failing to

1

protect him from the excessive use of force.[1]  (Doc. 2.)  Plaintiff seeks $300,000 in compensatory and punitive damages from Defendants in their personal capacities, and both parties have requested a jury trial.  (*Id.*; Doc. 15.)

Defendants have filed a Motion for Summary Judgment arguing they are entitled to qualified immunity.  (Doc. 45-47.)  Plaintiff has responded.  (Docs. 53-58.)  After careful consideration and for the following reasons, I recommend the Motion be denied, and the case proceed to a jury trial.

**II.    SUMMARY JUDGEMENT STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).

---

[1] All other claims and defendants have been previously dismissed without prejudice. (Docs. 8, 39.)

### III.   EVIDENCE

The parties agree about the following facts.  On June 16, 2021, Plaintiff was housed in barrack 9 at the North Central Unit.  (Docs. 47, 57.)  Sometime that morning, a non-party officer issued a major disciplinary accusing Plaintiff of masturbating in the shower.  Sergeant Drinkard and Corporal Teegarden entered the barrack to take Plaintiff to restrictive housing pending a disciplinary hearing.  Sergeant Drinkard gave Plaintiff several direct orders to exit the barrack and be hand cuffed in the hall.  The parties agree Plaintiff did not do so but disagree about what happened next.

Plaintiff says in his verified Complaint (Doc. 2 at 1-6), deposition (Doc. 45-18), declarations (Doc. 54, Doc. 55, Doc. 56), and grievances (Doc. 2 at 7-10; Doc. 45-21) he initially refused to obey the orders and asked for a captain to be present because he had an excessive force lawsuit pending against Sergeant Drinkard and feared he would be physically harmed in retaliation.  Defendants denied his request and then allegedly ordered Plaintiff to be handcuffed inside the barrack.  Plaintiff says before he could put down his shower clothes, Corporal Teegarden and Sergeant Drinkard grabbed him aggressively, and Sergeant Drinkard intentionally cuffed his hands behind his back so tightly the cuffs cut into his wrists and restricted the blood flow.  As they entered the hallway, Sergeant Drinkard allegedly said Plaintiff "was a lawsuit filing bitch" and Plaintiff called him a "weak ass bitch."  (Doc. 2 at 4; Doc. 45-18 at 29, 56.)  Plaintiff says Defendants Teegarden and Drinkard then "violently smashed" him against the wall or window to the adjacent barrack, causing neck and head injuries, and threw him to the floor even though he was not resisting and his hands were cuffed behind his back.  (Doc. 45-18 at 26-27, 34-36.)  According to Plaintiff, Sergeant Ward, Corporal Jenkins, and several officers arrived on the scene, jumped on top of him, pulled his legs and arms in opposite directions, punched him, and put their

3

knees in his back even though he was not fighting back. Plaintiff says one or more officers yelled, "break his fucking wrist." (*Id.* at 42.) Plaintiff also says he asked Captain Watson, who was observing nearby, for help, but she just looked at him. (*Id.* at 44-46.) The officers then restrained Plaintiff's legs and carried him down the hall. (*Id.* at 38-39.) Plaintiff says after crossing riot gate 10, Corporal Jenkins intentionally dropped him on the floor. (*Id.* at 28, 37-38.) Because he could not use his hands to break his fall, Plaintiff's says his face hit the floor chipping his right front tooth and loosening his left one. The officers then carried Plaintiff to a shower in isolation, put him on the floor, and turned him on his back. Plaintiff says, while he was still restrained and not resisting, Sergeant Ward pressed his knee on his neck making it hard for him to breathe, cut his clothing off with a knife, and purposefully cut his right knee. (*Id.* at 14-15, 28, 40-47.)

In contrast, Defendants say in their declarations[2] (Docs. 45-1, 45-2, 45-3), incident reports (45-12), and disciplinary charges (Doc. 45-13) that after they first ordered Plaintiff to be handcuffed, he said: "No. I'm not going anywhere you better call the captain here. I'll sue your ass." (Doc. 45-1 and 2.) Defendant Drinkard says when he tried to cuff Plaintiff's left wrist, Plaintiff turned towards him in an aggressive manner, Corporal Teegarden grabbed Plaintiff's right arm to stop him from doing so, and both officers cuffed Plaintiff's hands behind his back. After exiting the barrack, Plaintiff allegedly became argumentative, cursed the officers, and tried to turn towards them again. Corporal Teegarden and Sergeant Drinkard say they took Plaintiff to the ground to regain control and several officers, including Corporal Jenkins, arrived to assist. While on the floor, Plaintiff allegedly resisted and kicked Corporal Jenkins in the right bicep, forearm,

---

[2] Sergeant Ward's (Doc. 45-4) and Captain Watson's (Doc. 45-5) declarations were not considered because they are unsigned. *See* 28 U.S.C. § 1746 (a declaration must be written, signed, dated, and certified as true and correct under penalty of perjury). My staff sent defense counsel an email on August 16, 2022, to determine if this was inadvertent, but counsel never responded.

and elbow.  And Sergeant Drinkard's arm was scraped.  After regaining control and restraining Plaintiff's legs, Defendants carried Plaintiff down the hall.  After crossing through control gate #10, Defendants claim Plaintiff kicked Corporal Teegarden in the right hip knocking him to the floor.  The other escorting officers then took Plaintiff to the floor a second time to regain control.  After doing so, they carried Plaintiff to the isolation shower, cut off his clothing with a knife to search for contraband, and removed his restraints without incident.

Defendants have provided six video recordings taken from the prison's security cameras.  (Doc. 48, Exs. 7-12.)   The videos do not contain sound and are a series of still frames (rather than a continuous feed) that capture only portions of the incident.  And they do not conclusively establish either party's version of events.  The first video shows Corporal Teegarden and Sergeant Drinkard talking to Plaintiff in the barrack.  (Doc. 48, Ex. 8 at 9:45:30 to 9:46:37.)  Without sound, there is no way to tell what they are ordering Plaintiff to do or what he says in response.  Sergeant Drinkard circles to Plaintiff's left and behind him, the two men quickly pivot in a circle, Corporal Teegarden grabs Plaintiff's right arm, Plaintiff bends forward, and the two officers cuff Plaintiff's hands behind his back.  (*Id*. at 9:46:38 to 9:46:50.)  The jerky nature of the video makes it difficult to determine if Plaintiff was resisting or turning to face Sergeant Drinkard.  The three men then walk off screen without incident.[3]   (*Id.* at 9:46:59.)

The next video is in the hallway outside the barrack.  (Doc. 48, Ex. 12 at 9:46:35.)  Plaintiff exits the barrack being escorted by Corporal Teegarden and Sergeant Drinkard, with two

---

[3] Another video (Doc. 48, Ex. 11) appears to be an aerial view of Corporal Teegarden and Sergeant Drinkard handcuffing Plaintiff inside the barrack.  For unknown reasons, the time stamp begins at 10:44:59 and ends at 10:45:58, which is an hour later than Exhibit 8. In the future, it would be helpful if counsel would file videos in chronological order and provide a witness declaration identifying the parties, describing what is occurring, and explaining any discrepancies in the time stamps.

5

other officers walking behind. (*Id.*) After entering the hallway, the three-some move toward the far wall, Plaintiff's head and left shoulder hit the wall, and all four officers take him to the floor. (*Id.* at 9:46:59 to 9:47:07.) Due to the camera angle and gaps in the recording, it is impossible to tell if Plaintiff is resisting as alleged by Defendants, or if he was slammed to the wall and thrown to the floor as he claims. Approximately ten other guards arrive and get on top of and around Plaintiff, making it impossible to determine if he is resisting or the guards are purposefully attempting to injure him. (*Id.* at 9:47:08 to 9:48:49.) After Plaintiff's legs are restrained and he is surrounded by a large group of guards, Plaintiff is not allowed to walk. Instead, the guards carry him down the hall in a lateral position facing downward. Two guards are holding Plaintiff by his restrained wrists and elbows extended high above his back, one or more guards are holding his legs, and Plaintiff's head is pointed toward the floor.[4] (*Id*. at 9:48:50 to 9:48:58).

Another video shows Plaintiff after he is carried through the riot gate, but the time stamps appear to be an hour off. (Doc. 48, Ex. 10 at 10:49:02.) Two guards are holding Plaintiff's left arm, one is holding his right arm, one guard is holding each leg, and a group of officers walk behind. As they are proceeding down the hall, the guard holding Plaintiff's right arm falls to the floor. (*Id.* at 10:49:25 to 10:49:26.) It is unclear if he tripped or fell for another reason. The video does not show Plaintiff kicking any of the guards. Due to the camera angle and gaps between still frames, it is impossible to tell how Plaintiff fell to the floor or what is transpiring as guards circled around him. (*Id.* at 10:49:27 to 10:49:51) Then, mostly off camera, the guards pick up Plaintiff and carry him down the hall. (*Id*. at 10:49:52 to 10:50:12).

The last video shows Plaintiff being carried into the isolation shower without incident.

---

[4] Another video (Doc. 48, Ex. 9) shows guards carrying Plaintiff, but the time stamp begins at 10:48:54 and ends at 10:49:27. And there is no explanation where this is occurring.

Because the camera angle does not show what occurred inside the cell, it does not shed any light on whether Sergeant Ward kneeled on Plaintiff's neck or used a knife to remove his clothing. (Doc. 48, Ex. 7 at 9:49:48 to 9:54.48.) But cut clothing and restraints are seen being removed from his cell.

Later that day, Plaintiff was taken to the infirmary where a nurse recorded that he had a chipped front tooth, scratches on his cheeks, swollen and scratched wrists, and two abrasions on his right knee. (Doc. 45-15; Doc. 45-16 at 92-93.) Several times in June 2021, Plaintiff reported pain and swelling in his front two teeth; tingling, pain, and the inability to fully extend his arm; and pain in his wrists. (*Id*. at 13, 68-87, 126-130.) X-rays taken over a month later, on July 26, 2021, showed no abnormalities to Plaintiff's wrists and elbows. (*Id.* at 9-10, 97-100.) In August 2021, Plaintiff continued to complain of tooth pain, but it is unclear if he saw a dentist. (*Id.* at 48.) Plaintiff was subsequently found guilty of several disciplinary violations stemming from the June 16, 2021 incident.[5](Doc. 45-13.) And an internal affairs investigation exonerated Defendants of any wrongdoing. (Doc. 45-23.)

## IV.   DISCUSSION

### A.   Qualified immunity

Defendants say they are entitled to qualified immunity from Plaintiff's request for monetary damages from him in his individual capacity. Qualified immunity protects government officials from § 1983 liability for damages if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *City of*

---

[5] Plaintiff was found guilty of "battery - use of force on staff," "assault - verbal or written threat, and "refusing a direct verbal order." (Doc. 45-13.) He was found not guilty of "resisting apprehension" and "failure to obey order of staff." (*Id.*) The difference between "refusing a direct verbal order" and "failure to obey order of staff" is unclear.

*Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *Irvin v. Richardson*, 20 F.4th 1199, 1204 (8th Cir. 2021). Whether qualified immunity applies to the case at hand is a question of law, not fact, for the court to decide. *Kelsay v. Ernest,* 933 F.3d 975, 981 (8th Cir. 2019).

Defendants are entitled to qualified immunity if: (1) the evidence, viewed in the light most favorable to Plaintiff, does not establish a violation of a constitutional right; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that a reasonable official would not have known that his or her actions were unlawful. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (emphasis added); *MacKintrush v. Pulaski Cty. Sheriff's Dep't*, 987 F.3d 767, 770 (8th Cir. 2021). Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson* 555 U.S. at 236; *Mogard v. City of Milbank*, 932 F.3d 1184, 1188 (8th Cir. 2019). I find Defendant is not entitled to qualified immunity under either prong.

### 1.  Excessive Force Claim Against Defendants Teegarden, Drinkard, Ward, and Jenkins

The Eighth Amendment prohibits prisoners from being subjected to cruel and unusual punishment. To establish an Eighth Amendment violation, there must be evidence suggesting Defendants used force "maliciously and sadistically to cause harm" rather than in "a good-faith effort to maintain or restore discipline." *See Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010); *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). The relevant factors that must be considered when making this determination are: (1) the objective need for force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the defendants; (4) any efforts by defendant to temper the severity of the forceful response; and (5) the extent of the plaintiff's injuries. *Jackson*, 866 F.3d at 974; *Ward v. Smith*, 844 F.3d 717, 721-22 (8th Cir. 2016).

8

As previously described, there are genuine issues of material fact as to all five factors. But at summary judgment, the evidence must be viewed in the light most favorable to Plaintiff.[6] Viewing the evidence in this manner, a jury could find Defendant Drinkard intentionally handcuffed Plaintiff's wrists too tightly; Defendants Teegarden and Drinkard threw him against the wall while his hands were cuffed; Defendants Teegarden, Drinkard, Ward and/or Jenkins twisted, punched, and kneed him on the floor; one or more Defendants carried him in a painful manner while all four limbs were restrained; and Defendant Warden kneeled on his neck and purposefully cut his leg while removing his clothes. In June 2021, it was clearly established that such force could not be lawfully used on a non-resisting prisoner. *See Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002) ("force may be justified to make an inmate comply with a lawful prison regulation or order, but only if the inmate's noncompliance also poses a threat to other persons or to prison security," and "correctional officers do not have blank check to use force whenever a prisoner is being difficult"); *Johnson v. Blaukat*, 453 F.3d 1108, 1113-14 (8th Cir. 2006) (reversing summary judgment when there was evidence officers "tackled" a non-combative inmate, "piled on top of her," and choked her); *Estate of Davis v. Delo*, 115 F.3d 1388, 1394-95 (8th Cir. 1997) ("repeatedly striking an inmate's head on a concrete floor when the inmate's limbs were being restrained by four other officers and the inmate offered no resistance would violate clearly

---

[6] When qualified immunity is raised, summary judgment may not be granted simply because there are genuine issues of material fact. Instead, the trial court must go further and determine whether the evidence, viewed in the light most favorable to the plaintiff, would constitute a constitutional violation based on law that was clearly established at the time the event occurred. *See Wright v. United States*, 545 Fed. Appx. 588, 589-90 (8th Cir. Nov. 29, 2013) (explaining, in an excessive force case, that a "district court cannot, as it did here, merely note the existence of disputed facts and summarily decide that qualified immunity is inapplicable;" instead, the court must determine if the facts viewed in the light most favorable to the plaintiff "demonstrate a [1] constitutional violation that is [2] clearly established"); *Handt v. Lynch*, 681 F.3d 939, 944-45 (8th Cir. 2012) (same).

established law"); *Munz v. Michael*, 28 F.3d 795, 798-800 (8th Cir. 1994) (law was clearly established in 1989 that officers violated inmate's Eighth Amendment rights by beating him while he was restrained, even if he initially created a disturbance and sustained no serious injury). For these reasons, I conclude Defendants Teegarden, Drinkard, Ward, Jenkins, and Watson are not entitled to qualified immunity from Plaintiff's excessive force claims.

### 2. Failure to Protect Claim Against Defendant Watson

It was clearly established, in June 2021, that a prison guard "may be liable for failure to protect an inmate from a use of excessive force if he is deliberately indifferent to a substantial risk of serious harm." *Estate of Davis by Ostenfeld v. Delo*, 115 F.3d 1388, 1395 (8th Cir. 1997); *see also Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994). In her sworn declaration, Captain Watson admits she was present when force was used on Plaintiff on June 16, 2021. (Doc. 45-5.) And it is clear from the videos, she did not intervene. (Doc. 48, Exs. 7, 10, 12.) If a jury found the use of force was excessive, they could also find Captain Watson was deliberately indifferent when she failed to intervene. Thus, I conclude she is not entitled to qualified immunity.

### 3. Retaliation Claim Against Defendant Drinkard

It was also clearly established, in June 2021, that the Constitution prohibits prison officials from retaliating against inmates for engaging in protected activity. *Gonzalez v. Bendt*, 971 F.3d 742, 745 (8th Cir. 2020). To prevail on a retaliation claim, prisoners must show: (1) they engaged in a protected activity, (2) prison officials took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Gonzalez,* 971 F.3d at 745; *Waters v. Madson,* 921 F.3d 725, 741 (8th Cir. 2019).

In June 2020, Plaintiff filed *Jones v. Drinkard*, 3:20-cv-00166-DPM-JTR (E.D. Ark. 2020),

alleging Sergeant Drinkard and others used excessive force against him in May 2020. Filing a lawsuit is constitutionally protected activity. *See Beaulieu v. Ludeman*, 690 F.3d 1017, 1025 (8th Cir. 2012). Defendant Drinkard says Plaintiff cannot satisfy the second element because he continued to file grievances and a lawsuit after force was used against him. (Doc. 46 at 11.) But the ordinary firmness test "is an objective one, not subjective." *Gonzalez,* 971 F.3d at 745. "The relevant inquiry is what would a person of ordinary firmness have done in reaction to the adverse action?" *Id.* A reasonable juror could find that being beaten would chill a prisoner of ordinary firmness from filing any future grievances or lawsuits against prison guards. Defendant Drinkard also claims Plaintiff cannot show retaliation was the motivating factor for his June 16, 2021 use of force because it occurred a year after Plaintiff filed *Jones v. Drinkard*. But focusing on the date the first lawsuit was filed misses the mark. It is undisputed *Jones v. Drinkard* was (and still is) pending when Plaintiff says Sergeant Drinkard used excessive force against him in this case. A jury could find that having an active lawsuit pending against him was a sufficient reason for Sergeant Drinkard to want to retaliate against Plaintiff. *See Spencer v. Jackson Cty.*, 738 F.3d 907, 911-13 (8th Cir. 2013) (timing of adverse action can be strong evidence of retaliation). Further, both parties say Plaintiff asked for a captain to be present when Sergeant Drinkard initially confronted him inside the barrack. Plaintiff says he did so because he feared Sergeant Drinkard would retaliate against him. And, according to Plaintiff, Sergeant Drinkard called him a "lawsuit filing bitch" right before he slammed him against the wall. Based on this evidence, a jury could find Sergeant Drinkard used force to retaliate against Plaintiff. Accordingly, I conclude Sergeant Drinkard is not entitled to qualified immunity.

### B. Arkansas Assault Claim

Defendants ask the Court to not exercise supplemental jurisdiction over Plaintiff's state

law assault claim. *See* 28 U.S.C. § 1367(c)(3) (court may "decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction); *Gibson v. Weber,* 433 F.3d 642, 647 (8th Cir. 2006) ("Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed"). Because I find Plaintiff should be allowed to proceed with his § 1983 claims, I recommend this request be denied.

Defendants also say they are entitled to qualified immunity under Ark. Code. Ann. § 19-10-305, which provides state employees with "immunity from civil liability for non-malicious acts occurring within the course of their employment." *Ball v. Arkansas Dep't of Cmty. Punishment*, 10 S.W.3d 873, 876 (Arr. 2000) (emphasis added.) But, as explained by the Arkansas Supreme Court, "[i]ntentional torts overcome the immunity extended to State officers and employees" under § 19-10-305. *Grine v. Bd. of Trustees*, 2 S.W.3d 54, 59 (Ark. 1999) (emphasis added). And assault is an intentional tort under Arkansas law. *Costner v. Adams*, 121 S.W.3d 164, 170 (Ark. App. 2003). Accordingly, I conclude Defendants are not entitled to qualified immunity under Arkansas law, and I recommend Plaintiff be allowed to proceed with his assault claim.

## V.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. 45) be DENIED in all respects, and this case be set for a jury trial.

DATED this 29th day of August 2022.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE

12